UNITED STATES of America

v.

Benjamin JACKSON

No. CRIM.A.02–43–D.

United States District Court,
M.D. Louisiana.

June 24, 2004.

David Roy Dugas, Frederick Angelo Menner, Jr., United States Attorney's Office, Baton Rouge, LA, for United States of America.

Benjamin Jackson, Port Allen, LA, pro se.

Steven Young, I, Baton Rouge, LA, for Defendant.

### RULING ON PETITION FOR REVOCATION OF SUPERVISED RELEASE

BRADY, District Judge.

This matter is before the court on a petition by the government to revoke Benjamin Jackson's supervised release. On May 6, 2004, the court held a hearing on the revocation petition. The court found that Jackson had committed each of the five alleged violations of conditions of his supervised release.[1] At the court's request, the parties have filed briefs addressing the validity of the government's argument that defendant's supervised release was tolled as the result of his seven month incarceration on a state parole revocation.

### FACTS

Defendant was released from state prison in 1996 and placed on parole in connection with a state robbery conviction. On August 5, 1999, one month before his parole was scheduled to terminate, defendant was arrested in Mississippi on federal drug charges. When Jackson's parole officer learned of the federal charges, a parole violation warrant was issued sometime in late 1999. Jackson subsequently pled guilty to the federal charges; and, he was sentenced on June 16, 2000, to serve 20 months in prison followed by a term of supervised release of three years.

Jackson was released from federal custody on January 17, 2001, with his supervised release term scheduled to expire on January 17, 2004. In May of 2002, jurisdiction over this term of supervised release was transferred from the District of Southern Mississippi to this court. Then, on June 7, 2002, defendant was arrested by state authorities for violating his parole.[2]

Jackson filed a habeas corpus petition in state court challenging the validity of his parole revocation. On January 9, 2003, the state court held that defendant's parole revocation violated his due process rights because he was not given a timely prerevocation hearing as required by La. R.S. 15:574.7. The state court ordered credit for time served in federal custody (August 5, 1999 through January 17, 2001) and time spent on supervised release (thirteen months) against "any time [Jackson] ha[d] left to serve in Louisiana." That credit resulted in his being released a week later on January 17, 2003.

Thereafter, while on supervised release, Jackson tested positive for THC (marijuana) in April, June and August of 2003, and again on February 4, 2004. Jackson also failed to pay monthly installments on his fine during this time frame. In February of 2004, Jackson failed to submit a monthly report to the probation officer, and in February and March of 2004, he failed to follow instructions of the probation officer and failed to participate in an inpatient treatment program. On March 23, 2004, the government petitioned to have Jackson's supervised release revoked, and a warrant was issued for his arrest. As noted above, the court held a hearing and found that the government had proven the alleged violations.

---

1. In his opposition, defendant concedes that the government proved the charged violations.

2. The offense forming the basis for the parole revocation was committed on August 5, 1999, which was during his parole term. The warrant suspended the parole term from running. See, La. R.S. 15:574.6. His parole term was automatically revoked as of the date of the commission of the federal drug crime on August 5, 1999. La. R.S. 15:574.10.

## ISSUE

The critical issue in this case is whether defendant's supervised release had expired at the time the federal petition for revocation was filed and the warrant was issued [3] or if the supervised release term was tolled during defendant's state incarceration as a result of the parole revocation. Pursuant to 18 U.S.C. § 3624(e), "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, state, or local crime."

While Jackson was on supervised release, his state parole was revoked and he was incarcerated in state custody from June 7, 2002, through January 17, 2003. The government contends that defendant's supervised release term was tolled during this period because his incarceration was in connection with a previous state robbery conviction. On the other hand, Jackson maintains that the supervised release term was not tolled because the state court found his state parole revocation violated his due process rights. In reply, the government contends that the state court did not find the defendant's parole revocation violated his due process rights and that Jackson has misinterpreted the holding of the state court.

## ANALYSIS

To determine the basis for the state court's ruling, the court has carefully reviewed the Report and Recommendation of the Commissioner, which was adopted by the state judge. That report shows that the issue before the state court was whether the failure to provide a prerevocation hearing "within a reasonable time" amounted to a violation of due process.

No action was taken on the 1999 parole violation warrant until Jackson was arrested by Louisiana agents in 2002. In June of 2002, Jackson began serving 32 months as a result of his parole revocation. The Commissioner considered at length what relief would be appropriate (i.e., immediate release or credit toward release from any further parole). The report makes plain, however, that either theory of relief was grounded on a due process violation resulting from the State's failure to initiate revocation proceedings within a reasonable period of time.

The state judge, Judge Timothy Kelley, approved the Commissioner's report, adopting the recommendation that Jackson be given credit for time against the balance of the Louisiana sentence (for the time spent in federal custody and at liberty for 13 months). While Jackson's due process rights were not referenced in the judgment dated January 9, 2003, the judgment specifically adopted the Commissioner's Report. The report clearly finds that defendant's due process rights were violated regardless of the relief adopted by the court to remedy the violation. Therefore, the court disagrees with the government's contention that the state court failed to find a violation of due process.

With the foregoing in mind, the court turns to Jackson's first argument, i.e. that the state revocation proceeding being declared unconstitutional—it should be considered "void from its inception" and without any effect in law. Defendant concedes that the only authority he has for this argument is to analogize to jurisprudence holding statutes unconstitutional. Jackson's second argument is that the effect of

---

**3.** A district court has jurisdiction to revoke a term of supervised release after expiration of the original term if a summons or warrant is issued during the release period. 18 U.S.C. § 3583(i). In this case, a few of the violations were committed prior to January 17, 2004, the date that his supervised release was originally scheduled to terminate. The warrant, however, was issued after that date.

Judge Kelly's ruling was to retroactively set his state parole release date in April of 2002.[4] Hence, when the State Board of Parole revoked his parole on June 7, 2002, it was not doing so "in connection with a conviction."

The government cites *United States v. Johnson*, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39, (2000) as involving a similar situation. In *Johnson*, the defendant had been convicted of multiple federal crimes. Two of his convictions were later invalidated and as a result, when he was set free, he had served "excess prison time." Johnson sought to have his term of supervised release reduced by the extra time served on the vacated convictions. The Supreme Court framed the issue as being whether a term of supervised release begins on the date of actual release or on the date defendant should have been released but remained in prison. Following the language of § 3624, the Supreme Court held that the term of supervised release was not subject to reduction for excess time served in prison.

However, as Jackson observes, *Johnson* does not address tolling of an ongoing term of supervised release, but rather the commencement date for a supervised release term. Nevertheless, *Johnson* lends some guidance to the issue at hand. First, the court must start with the language of the statute. In this instance, the pertinent part of § 3624(e) provides—"A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, state, or local crime unless the imprisonment is for a period less than 30 consecutive days."

There can be no dispute that Jackson was actually placed in state custody as the result of parole revocation proceedings in connection with the state burglary conviction. That conviction has not been vacated or called into question. Moreover, Judge Kelley did not vacate or invalidate the parole revocation sentence; he gave Jackson credit toward the time he had left to serve.

While the state court found that Jackson's due process rights had been violated, the court was apparently referring to a procedural violation (the failure to timely hold a revocation hearing) as opposed to a substantive one. The substantive grounds for the parole revocation was the federal conviction in this case, which cannot be seriously attacked by defendant at this juncture. The court finds that Jackson was in imprisoned in connection with a state court conviction within the plain meaning of § 3624(e).

Secondly, *Johnson* considered the statute's "purpose and design."

The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. See § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov.1998); see also 1119 S.Rep. No. 98–225, p. 124 (1983) (declaring that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other

**4.** Judge Kelly gave Jackson credit for the time he served in federal custody plus the time he was at liberty on supervised release, which defense counsel calculates as being 2 years, 10 months and 2 days.

purposes but still needs supervision and training programs after release").

*U.S. v. Johnson,* 529 U.S. 53, 59 –60, 120 S.Ct. 1114,1118–1119, 146 L.Ed.2d 39 (2000)

In other words, "incarceration and supervised release are not fungible." *U.S. v. Jeanes,* 150 F.3d 483, 485 (C.A.5 1998).

The supervised release term serves a broader, societal purpose by reducing recidivism. While substituting wrongful incarceration time for supervised release time may even the ledger from the defendant's perspective, it affects the public by eliminating the defendant's transition period.

*U.S. v. Jeanes,* 150 F.3d 483, 485 (C.A.5 1998)

Even when the reasons for incarceration are later found to be invalid, the goals of supervised release would be thwarted by treating the incarceration as it did not happen. The reality of the situation is that Jackson's incarceration kept the federal probation officer from supervising him. Tolling the supervised release term under the circumstances of this case serves the purpose and goals of § 3624.

This does not mean that defendant is without any relief or that the court is not sympathetic to his argument. The court observes that the section of the Guidelines Manual governing Supervised Release Violations does not set forth "guidelines" but rather "policy statements" for the courts to follow. The court will consider defendant's arguments in connection with imposition of sentence.

### *CONCLUSION*

Accordingly, the petition to revoke defendant's supervised release is granted

and sentence will be imposed as promptly as possible.